```
                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                         NORTHERN DIVISION


- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :
                                :
                v.              :   Criminal No. 14-00002-JFM
                                :
RICHARD LEE,                    :
                                :
                Defendant.      :   February 5, 2014
                                :
- - - - - - - - - - - - - - - - x   Baltimore, Maryland
```

**HEARING**

BEFORE THE HONORABLE BETH P. GESNER, Judge


APPEARANCES:              MARK CROOKS, Esq.
                          Office of the United States Attorney
                          6500 Cherrywood Lane
                          Suite 400
                          Greenbelt, Maryland  20770
                            On Behalf of the Government

                          JOSH TREEM, Esq.
                          EMILY LEVINSON, Esq.
                          Brown, Goldstein, Levy, LLP
                          120 East Baltimore Street
                          Suite 1700
                          Baltimore, Maryland  21202
                            On Behalf of the Defendant

Audio Operator:           Jill Klein

Transcription Company:    CompuScribe
                          5100 Forbes Boulevard
                          Suite 101
                          Lanham, Maryland  20706
                          (301) 577-5882


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

<u>I N D E X</u>

<u>Page</u>

Court Reads Charges                                                    4

Qualification of the Defendant                                        6

Argument on Behalf of the Government
  By Mark Crooks, Esq.                                                7

Argument on Behalf of the Defendant
  By Joshua Treem, Esq.                                               10

Further Argument on Behalf of the Government
  By Mark Crooks, Esq.                                                24

Further Argument on Behalf of the Defendant
  By Joshua Treem, Esq.                                               27

Comments by the Court                                                 33

Comments on Behalf of the Defendant
  By Joshua Treem, Esq.                                               37

Comments on Behalf of Pretrial Services
  By Alicia LaRue                                                     41

Comments on Behalf of the Government
  By Mark Crooks, Esq.                                                42

Ruling of the Court Regarding Detention                               45

Court and Third-Party Custodian Re. Responsibilities                  48

Court and Defendant Re. Conditions of Release                         49

KEYNOTE:   "---" indicates inaudible in the transcript
           "*" indicates phonetically spelled in the transcript

1                      P R O C E E D I N G S

2              THE CLERK:  -- resumes in session.  The Honorable

3    Beth P. Gesner presiding.

4              THE COURT:  Please be seated.

5              MR. CROOKS:  Good afternoon, Your Honor.

6              THE COURT:  Good afternoon, Mr. Crooks.

7              MR. CROOKS:  This is United States versus Richard

8    Lee.  Mark Crooks for the Government.  And it is Case No. JFM-

9    14-02.  And the two case agents, Patricia Teckle* and Stacy

10   Bradley, they are actually sitting behind the defense table.

11             THE COURT:  Thank you.

12             Good afternoon, Mr. Treem.

13             MR. TREEM:  Yes.  Good afternoon, Your Honor.

14   Joshua Treem and Emily Levinson on behalf of Richard Lee, who

15   is seated at counsel table to my right.

16             THE COURT:  Thank you.  Good afternoon to all of

17   you.

18             Mr. Lee, we are --- appearance.  And the purpose of

19   this proceeding is to tell you what the charges are, tell you

20   what your rights are, and to discuss your release status

21   pending your next court appearance.

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And I gather you have reviewed the

25   superseding indictment with Mr. Lee, Mr. Treem?

1           MR. TREEM:  Yes, Your Honor.

2           THE COURT:  I am not going to read the entire

3  indictment to you, Mr. Lee, but I want to make sure you know

4  what the charges in each count are.

5           You are charged in count one of the indictment,

6  superseding indictment, with transportation with intent to

7  engage in criminal sexual activity.  The maximum penalty for

8  count one is 15-year minimum mandatory, 30-year maximum term.

9  What that means -- is that correct, Mr. Crook?

10          MR. CROOK:  I am sorry.  I had put a corrected

11 speedy trial form in front of you, Your Honor.  And I am not

12 sure if --

13          THE COURT:  Oh.  I am looking at the old one.  Okay.

14 I stand corrected, Mr. Lee.

15          Count one of the indictment, the maximum term is up

16 to life imprisonment with a ten-year minimum mandatory, $1

17 million fine, and lifetime supervised release that would follow

18 any period of incarceration.

19          The minimum mandatories that I referred to, in

20 essence, are required minimums that the Court has to sentence

21 you on with some exceptions.  And then the maximum allowed is

22 the life, as it relates to count one.

23          Counts two and three.  Count two of the indictment,

24 you are charged with a violation of Title 18 Section 2423.  I

25 am sorry.  Counts two and three in the indictment charge you

1  with two separate counts of violation of Title 18 of the United

2  States Code Section 2252(a)(2); that is, receipt of child

3  pornography.  The maximum penalty for each of those two counts

4  is a five-year minimum mandatory term, a ten-year maximum term,

5  a lifetime supervised release, and a five each of $250,000.

6          Count four of the indictment appearing at page eight

7  charges you with aggravated identity theft in violation of

8  Title 18 of the United States Code Section 1028(a).  The

9  maximum penalty for that offense is a two-year consecutive term

10 that would be imposed to serve after any other sentence that

11 were imposed.

12         Count five of the indictment charges you with

13 production of a visual depiction of a minor engaged in sexually

14 explicit conduct in violation of Title 18 of the United States

15 Code Section 2251(a).  The maximum term for that offense is a

16 15-year minimum mandatory term.  The maximum allowed is 30

17 years, a $250,000, and 5 years of supervised release.

18         And finally, the indictment includes a forfeiture

19 count, which asks that certain property be forfeited to the

20 government.  There is no jail time associated with that

21 forfeiture count.

22         Do you understand what the charges are and what

23 maximum possible penalties are in the superseding indictment?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Now, you have the right to remain silent

1    with respect to the charges.  You are not required to make any

2    statements.  And if you did, it could be used against you.  You

3    also have the right to have an attorney represent you at all

4    stages of the proceedings.  And if you cannot afford counsel,

5    counsel would be appointed for you at no cost to you.

6              Do you understand both of those rights, Mr. Lee?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And if I could ask you to please stand

9    and raise your right hand.  The clerk is going to swear you in.

10   And I am going to ask you a few questions.

11              (Whereupon, the Defendant was sworn.)

12              THE CLERK:  Please state your full name for the

13   record.

14              THE DEFENDANT:  Richard Lee.

15              THE CLERK:  Thank you.

16              THE COURT:  You can be seated, Mr. Lee.

17              Can you tell me your age, please?

18              THE DEFENDANT:  Thirty-two, Your Honor.

19              THE COURT:  And the year you were born?

20              THE DEFENDANT:  1981.

21              THE COURT:  And what is your current address?

22              THE DEFENDANT:  630 South Wolfe Street, W-o-l-f-e,

23   Baltimore, Maryland.

24              THE COURT:  Within the last 24 hours, have you had

25   anything to drink or taken any kind of drugs, prescription or

1   otherwise, that are currently affecting your ability to

2   understand these proceedings?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  Do you understand everything so far?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And I gather you have been retained,

7   Mr. Treem.

8              MR. TREEM:  Yes, we have, Your Honor, myself and

9   Ms. Levinson.

10             THE COURT:  Okay.  Very well.

11             So Mr. Lee, we will assume that counsel seated next

12  to you will be representing you going forward, unless we are

13  told otherwise.

14             And what is the Government's position on release?

15             MR. CROOKS:  Your Honor, first I want to thank

16  Alicia LaRue, because she gave me the feedback, I think, that

17  she didn't have to give.  That was helpful to me today, knowing

18  that Pretrial would take a stance that I informed her was

19  different from what Pretrial is advocating.  And that is

20  largely because I had given my word to defense counsel prior to

21  today that if the Defendant would self-surrender and, of

22  course, appear with counsel, and also coupled with the fact

23  that he has known about this investigation for nine months,

24  that the parties have tried unsuccessfully to reach an

25  agreement.

1            Those two factors principally militated in favor of

2   the Government on today's date agreeing to release, but with

3   conditions.  And I think that is probably -- I am anticipating,

4   based on some feedback I got also from Ms. Levinson and

5   Mr. Treem prior to this hearing, that I think that that

6   discussion will undoubtedly go next.  And of course, I would

7   like to be heard on that.

8            I do know that --

9            THE COURT:  I am not sure I followed you on the last

10  thing you said.

11           MR. CROOKS:  Sure.  I think we also will have an

12  ultimate disagreement about the conditions of release.

13           THE COURT:  Okay.

14           MR. CROOKS:  But I am not going to belabor that now

15  until it becomes, I think, a better waypoint to talk about

16  that.  But I know that these charges to bring rebuttable

17  presumptions in favor of detention.  And undoubtedly, I credit

18  Pretrial for relying on those presumptions, but also factoring

19  all the other things they ---.  It is not that we don't agree

20  with a lot of the arguments made by Ms. LaRue on behalf of

21  Pretrial.  We certainly do.  There is a lot here that does give

22  pause.

23           The Defendant has shown a capability and a

24  willingness to make counterfeit documents.  He does have

25  extensive ties out of state.  It is not just to Canada, but

1   also to Korea and to Austria.  In addition to that, he travels

2   out of state, which is not unusual certainly for a person of

3   his socioeconomic background.  But there are a lot of things

4   that in totality I credit Pretrial for presenting to the Court.

5           But this is one of those cases were, A, I gave my

6   word to the defense that if they self-surrendered that I would

7   not advocate for detention.  But also, as I said, they have

8   known about this case for a long period of time.  We have had

9   the passport since warrants were executed quite some time ago.

10  And for that, I think there are conditions that could be set

11  that would reasonably ensure his return to court.

12          THE COURT:  Do you want to address what you think

13  are appropriate?

14          MR. CROOKS:  Yes, Your Honor.  I think there are

15  numerous things that are appropriate.  I interpret the Adam

16  Walsh Act as mandating, where these charges are here, as

17  mandating electronic home monitoring.  I appreciate the fact

18  that before the hearing the defense gave me a couple Second

19  Circuit District Court cases that I have only just had a chance

20  to take a cursory look at.  But I don't see them as binding on

21  the Fourth Circuit.

22          And even within the body of the cases themselves,

23  they seem to say that they are going counter to the Eighth and

24  Ninth Circuits that have ruled that the per se requirements of

25  the Adam Walsh Act that mandate electronic home monitoring are

1  not unconstitutional.  So I agree with that.

2            So I think as a foundational stepping off point,

3  electronic home monitoring is a necessity.

4            I also think, based on the nature of the crimes,

5  which involve the possession of child pornography, the creation

6  of child pornography, but also the production of counterfeit

7  documents, as well as the posting of back page ads online to

8  facilitate the first counts in the indictment, all of those

9  things also militate in favor of no internet usage in the home

10 and certainly a third-party custody where there would be active

11 accountability by a third person that could ensure compliance

12 with the obligations to also return to court.

13            I think that essentially what I am advocating for is

14 one tick to the right, if you will, of confinement.  That is,

15 pretty much the full line-up of conditions that are not

16 detention, but close near thereto that you can accomplish.  And

17 I did discuss some of this with Pretrial prior to coming here

18 today.

19            THE COURT:  Okay.  Mr. Treem?

20            MR. TREEM:  Yes, Your Honor.  First, I want, with

21 the Court's permission, I just want to respond to the Pretrial

22 Services recommendation of detention.  And I appreciate

23 Mr. Crooks's remarks on that regard.

24            But, first of all, a couple of observations of the

25 report.  I think the bottom line is that the reasons on the

1  assessment, page five, of the Pretrial Services report, the

2  reasons, the factors, given for nonappearance just aren't met,

3  even by the body of the two and a half pages of the report.

4  And if the Court will permit me just to go through them

5  quickly.

6              THE COURT:  Sure.

7              MR. TREEM:  Unverified immigration status.  That, it

8  seems to me, seems to be based on the inability of Pretrial

9  Services officers to get a response by now.

10             THE COURT:  I think that is right.

11             MR. TREEM:  So, I mean, it is not that it is

12 unverified.  I mean, Dr. Lee, the father, who is present in the

13 courtroom, was interviewed.  He said he was naturalized.

14 Richard is his second son.  He is naturalized, too.  And so

15 there is no -- I mean, the unverified immigration status as

16 somehow a negative factor, I think, is inappropriate.

17             The nature of the alleged incident offense.  Well,

18 with all due respect to the Pretrial Services officer, this is

19 based on the indictment alone, presumably.  And she has not had

20 access to obviously the information the Government has, nor

21 information that we have.  And I will perhaps address that in a

22 moment.  But I think it is fair to say that on a global scale,

23 if you go through the counts of the indictment, it sounds, and

24 I don't mean to belittle the charges at all, but it sounds far

25 worse than it is.  And I will get to that in a moment.

1              Possession of a passport.  He doesn't have a

2   passport.  It was seized at the time of the search of Mr. Lee's

3   home about ten months ago.

4              Prior foreign travel.  That is associated with

5   business.  And what is significant about the prior travel is

6   that it was, the most recent trip, which I believe was to

7   Vienna, Austria, was done at a time when Mr. Lee knew that this

8   investigation was ongoing.

9              THE COURT:  You all are talking about search

10  warrants and when he knew.  Can you give me a time frame on --

11             MR. TREEM:  Yes.  I believe the search -- Mr. Crooks

12  will certainly correct me if I am wrong.  I believe the search

13  of Mr. Lee's home in Baltimore was in March of last year.  And

14  it was shortly before that that Mr. Lee traveled overseas and

15  came back from Austrian.  His passport was seized along with

16  the computers or computer that allegedly contains the child

17  pornography that is described in the indictment.

18             Significantly, over the course of the ensuing ten

19  months, there has been no indication at all -- and the

20  Government certainly does not contend that there has been --

21  any indication that Mr. Lee has engaged in any criminal

22  activity whatsoever, whether associated with these allegations

23  or something different.

24             So the records to strong foreign ties just is not

25  supported by the record.  The business trip was to a startup

1  company, which is barely in business.  Other trips were taken

2  as vacations, as he described to the Pretrial Services officer.

3  There is nothing inherently wrong about that or would suggest a

4  nonappearance.

5          As Mr. Crooks has said, he self-surrendered,

6  reported to the marshals this morning, pursuant to his being

7  advised that there was an arrest warrant, and has been

8  available over the past ten months to counsel.  Whenever

9  counsel needed to speak with Mr. Lee, he was available.  There

10  is nothing in his record to suggest nonappearance.

11          Discrepant mental history, mental health history.  I

12  gather the reference to that is some reference to a discrepancy

13  between what Mr. Lee, the father, described as his

14  understanding of the medication taken by Mr. Lee, the son.  But

15  regardless, that hardly -- even assuming that that is an

16  accurate description, it hardly supports a claim that somehow

17  Mr. Lee won't show up when required to do so.  And it certainly

18  doesn't seem to me the least bit odd that since the searches

19  and knowledge of this investigation might cause some stress,

20  which might require some medication from time to time, and that

21  is what Mr. Lee reported.

22          Unknown substance abuse history to include prior

23  drug-related arrests.  Your Honor, I told Mr. Lee not to answer

24  the question of substance abuse.  But since the Pretrial

25  Services officer seems to hold that against him, I feel

1   compelled to explain.

2          At the time of the search warrant, a small amount of

3   a controlled substance was found in the house.  Mr. Lee was

4   charged in the state with possession of that drug.  The case

5   was stetted.  That is his only record.  There is no conviction.

6   He was released under cognizance.  There is no suggestion that

7   he has been doing anything drug related since.  That is the

8   nature and extent of his prior abuse history, if you will.

9          With respect to the danger to the community, which

10  has to be established by clear and convincing evidence, that is

11  even less supported here.  And the prior arrest records I

12  talked about.  Discrepant mental history I talked about.  And

13  the unknown substance abuse history I talked about.  But let me

14  talk about the nature and circumstance of the alleged instant

15  offense, if the Court will indulge me.

16          But first, let me back up.

17          The Pretrial Services report does reflect that

18  Mr. Lee has no prior convictions, if you will, even if you want

19  to characterize the possession charge as somehow being a

20  triggering prior record of some kind.  He has been gainfully

21  employed.  He has substantial family and personal contacts to

22  Maryland.  His father and brother are here in the courtroom and

23  have expressed a willingness to act as third-party custodians,

24  if necessary.  He is generally in good health other than

25  perhaps the stress that this entire matter has brought to bear

1  on him.  He is a naturalized citizen.  And there is nothing to

2  suggest in his record that he is a danger other than the

3  charges.  So let me kind of get to those, if the Court will

4  permit me.

5        What is apparent from, I think, even a casual

6  reading of the indictment is that putting aside the charge of

7  receipt of child pornography, all the other charges relate to a

8  single individual, who is identified as T.G. in the indictment.

9  That is the person who is described as a victim.

10       The indictment, what the indictment doesn't say

11  specifically, but which I think can be inferred, is that at the

12  time Mr. Lee met T.G., she was operating as a prostitute in

13  Baltimore.  She lied to him about her age, as reflected in some

14  of the introductory paragraphs.  Mr. Lee did not know about her

15  true age or what she represented to be her true age until

16  months later.  And the significance of that is that he, if you

17  credit the allegations, he would have traveled to Florida with

18  her believing that she was 19 and not 16.

19       The crux of this count, count one, kind of turns on

20  the intent allegedly that Mr. Lee had to engage in sex with her

21  in Florida in violation of Florida law.  So that is count one.

22  There is no allegation that Mr. Lee was doing this with anyone

23  else.  It was just T.G.  And I guess the point is that it is

24  the age issue that triggers the crime, not the character of the

25  relationship, which I think is appropriate to describe as

1   consensual.

2           There is an allegation that Mr. Lee paid for her

3   services initially, but there is no such allegation of that

4   when they went to Florida.  In fact, it is in fact alleged that

5   they continued to have sexual relations there.

6           So I think it is accurate to say, at least based on

7   this indictment, that one could consider that conduct, whether

8   it constitutes a per se violation or a strict liability

9   violation of Florida law, consensual sexual activity.  So, you

10  know, whether or not T.G. can be described as a victim is open

11  to, I would say, significant debate.

12          As I indicated earlier, Your Honor, the search and

13  seizure of the computers and documents and the passport took

14  place about ten months ago.  Again, Mr. Lee was on notice at

15  that point.  Again, there is no allegation that he has done

16  anything untoward or inappropriate since that date.  The

17  Government has the instrumentalities of the crime charged.

18  They seized computers.  They seized his passport.  They seized

19  a camera, which I believe they claim is associated with their

20  production count.

21          Significantly, I think it might be safe to infer

22  that Mr. Lee, because of his education and his ability to be

23  gainfully employed and have some assets, and because he is

24  charged with having produced a false I.D. before, could do it

25  again.  That is belied by the fact that he is here.  If he were

1   going to do that, he had every opportunity to do it while the

2   investigation was going on.  And the Government is not asking

3   for detention, recognizing that very fact.  And I would suggest

4   that there is, from that, there is no evidence that would

5   support by any evidence at all, let alone clear and convincing

6   evidence, that Mr. Lee, in some respects, constitutes a danger

7   to the community.

8          So I would ask the Court not to detain Mr. Lee, but

9   otherwise do what the Bail Reform Act requires, which is to

10  find the least onerous conditions that would provide some

11  assurance that Mr. Lee would report as directed and not

12  constitute a danger to the community.

13         You know, contrary to my brother, Mr. Crooks's,

14  remarks about, you know, one tick to the right of detention

15  being an appropriate determination by the Court, we have some

16  arguments to address in that regard, as well.  I don't know

17  whether the Court wants to hear those now or not.  I guess it

18  may very well turn on whether you want to detain Mr. Lee or

19  not.  But I am happy to address those now, if that is what you

20  wish.

21         THE COURT:  I would probably address, because I have

22  to consider whether or not there are conditions of release that

23  adequately address the flight and danger concerns.

24         MR. TREEM:  Okay.  Fair enough.

25         We gave the Court a couple of cases.  And

1  Ms. Levinson and I have not the opportunity to study them in

2  great detail.  But we would, for the record, we would argue

3  that that mandatory language in the Adam Walsh statute that

4  comes at the end of, I guess it is, 3142(c)(b)(xiv), if I

5  remember my roman numerals correctly, is unconstitutional on

6  two bases.

7          One, on its face as a violation of due process,

8  denying Mr. Lee his right to travel without due process, to

9  kind of generalize the argument; and --

10         THE COURT:  I could probably make one observation on

11  this front, Mr. Treem.  I did read your cases, and I understand

12  there is some case support for that.  I have never been on that

13  side of it.  But I would say in this particular case, if I were

14  to set electronically monitoring conditions, it would not be

15  because I felt like I was required to by the statute.

16         MR. TREEM:  Right.

17         THE COURT:  It was because I would believe it would

18  be necessary.

19         MR. TREEM:  Okay.  All right.  Then let me address

20  that, if I could.  I will go right to that, because I know the

21  Court is aware of the arguments, as applied and on its face and

22  that kind of stuff.

23         Based on what is before Your Honor and based on the

24  Government's presentation and based on what we contend is very

25  much a lack of the substance of what the Pretrial Services

 1  officer claims is appropriate for detention, we would argue

 2  that if the Court is inclined to impose electronically

 3  monitoring, that it do it consistent with a curfew, that there

 4  is no requirement, based on Mr. Lee's personal situation in

 5  which he is, again, gainfully employed and which he can live

 6  with his parents, who would act as third-party custodians, that

 7  there is any necessity for a 24/7 requirement for electronic

 8  monitoring.

 9          By the way, I would add here, Your Honor, that in

10  regard to the electronic monitoring a dedicated phone line has

11  already been installed at Mr. Lee's father's residence and is

12  available to be up and running consist with any order that the

13  Court may wish to impose.  But --

14          THE COURT:  Can I ask a question about which

15  residence you are proposing?  I saw in the Pretrial report --

16          MR. TREEM:  Silver Spring residence, Your Honor.

17          THE COURT:  The Link?

18          MR. TREEM:  Yes.

19          THE COURT:  Okay.  It said an indication of

20  relocating there.  So I was not quite sure.

21          MR. TREEM:  Yes.  It is that -- Dr. Lee, the father,

22  travels extensively.  And because of the nature of his work, he

23  is often away from the Silver Spring address for days and

24  actually weeks on end.  And so he actually has ownership

25  interest in other locations.  But to act as third-party

1  custodian for his son, he will reside at 2212 Link in Silver

2  Spring, and that is where his son will be, as well.

3          What the report doesn't say is that the father and

4  son -- the son works at the father's business in Columbia on a

5  daily basis.  So he can provide the kind of constant assurance

6  and custodial assurance that would otherwise be necessary and

7  needed.  Mr. Lee has a full-time job.  That should continue.

8  There is no reason why it shouldn't.  And electronic monitoring

9  is difficult to live with for any extended period of time.

10          Again, given Mr. Lee's character and conduct

11  throughout this investigative period, we would argue that there

12  is no necessity for the 24/7.  Dr. Lee, the father, is prepared

13  to act as the third-party custodian, as we have indicated.

14  Again, the family contacts we think would provide the Court

15  with plenty of assurance.  And if you are asking for a more

16  specific definition of the time frame I had in mind, I think it

17  is appropriate that Mr. Lee be allowed to go to work with his

18  father and continue in that regard, and that, if the Court

19  wishes to impose a curfew during which electronic monitoring

20  would be, I guess, on, it should be from 10:00 p.m. to 6:00

21  a.m.  And that can be seven days, but that provides, I think,

22  the assurances that the court would need on the one hand and

23  provide Mr. Lee with a certain degree of freedom of movement,

24  which we think the facts of this case certainly permit.

25          There is still no evidence that he would constitute

1    a danger to this community even given the allegations of this

2    case.  And in that regard, I would just note, Your Honor,

3    that -- and again, this is based on the face of the

4    indictment -- the child pornography that is allegedly on his

5    computer is dated 2009 and 2010.  It is not -- you know, we are

6    talking about receipt that allegedly happened four years ago or

7    five years ago.

8            THE COURT:  Are you talking about the ones that are

9    listed in counts two and three?

10           MR. TREEM:  Yes.  Yes.

11           THE COURT:  Because I guess the allegation is that

12   600 images were found.  I don't know if those dates correspond

13   to the whole --

14           MR. TREEM:  Well, I would submit, Your Honor, based

15   on what we know, the dates correspond to these two.  They are

16   contemporaneous.  And so I would submit that there is certainly

17   nothing that we have heard here today which suggests that

18   Mr. Lee received any child pornography at our about or shortly

19   before the time of the search.

20           And so, you know, to the extent that there was

21   receipt and/or possession, it is -- as I say, it is not

22   contemporaneous.  And so that, I think, only serves to

23   highlight what we would argue is the very limited scope of the

24   charges.  It is one -- and I hate to use the word victim,

25   because I don't consider T.G. to be a victim in the slightest.

1   But it is just one person and images that were received years

2   ago.

3           And I think in light of that and in light of

4   Mr. Lee's history and lack of criminal history and other

5   criminal conduct, that if the Court is inclined to impose

6   electronic monitoring, that it do it consistent with the curfew

7   that we have asked for.

8           But also let me say, Your Honor, I don't want to

9   give up, and I want the record to clearly reflect that we think

10  that if the Court feels compelled -- we believe that that

11  section is unconstitutional both on its face and as applied.

12          THE COURT:  Although I gather you would recognize

13  that if I determined that condition is necessary to address

14  flight and danger concerns, that it would not run afoul of

15  the -- I mean, I can impose electronic monitoring in any case.

16  Right?

17          MR. TREEM:  Absolutely, Your Honor.

18          THE COURT:  Yes.

19          MR. TREEM:  You are right.  You are absolutely

20  right.  That is true.  And I think it is one of the Eight

21  Circuit, maybe it was the Eighth or Ninth Circuit cases that

22  essentially said that.  And, you know, we understand that.  And

23  we have explained that to Mr. Lee, as well.

24          I just want to put on the record our position in

25  case the Court were to say:  I can't even consider any of this

1    because --

2                  THE COURT:  I hear you.

3                  MR. TREEM:  Because I am mandated, I don't have a

4    choice.

5                  THE COURT:  I understand.

6                  MR. TREEM:  If the Court will just bear with me one

7    moment.

8                  (Pause)

9                  MR. TREEM:  Unless the Court has any additional

10   questions, we would submit.  Thank you.

11                 THE COURT:  So your proposal is for Mr. Lee to go

12   reside with his parents. --

13                 MR. TREEM:  Yes.

14                 THE COURT:  -- in the Silver Spring home --

15                 MR. TREEM:  Yes, Your Honor.

16                 THE COURT:  -- and continue to be able to work.

17                 MR. TREEM:  Yes, Your Honor.

18                 THE COURT:  Okay.  Are there any other aspects of

19   it?  So you propose that Mr. Lee's father would be a third-

20   party custodian.

21                 MR. TREEM:  Yes, Your Honor.  And I believe the pre-

22   sentence report reflects, the Pretrial Services report reflects

23   the willingness of the father to do that.

24                 THE COURT:  Yes, it certainly does.

25                 MR. TREEM:  And we would ask that.  And the only

1  other thing, Your Honor, I would ask that -- we would hope the

2  Court wouldn't think that electronic monitoring is necessary in

3  this case.  But if the Court believes that is so, we would ask

4  that it be limited to, tied to a curfew for Mr. Lee, which

5  would assure that he is home between the hours of 10:00 p.m.

6  and 6:00 p.m., and that the condition the electronic monitoring

7  be set for that time period; that is, that it not be 24/7.

8            THE COURT:  Okay.

9            MR. CROOKS:  Your Honor, may the Government be heard

10  on conditions?

11            THE COURT:  Sure.

12            MR. CROOKS:  The first thing I want to address is

13  sort of the assessment of what the indictment portends and what

14  the facts show.  First off, I am not sure why the defense has

15  engaged in a question of whether she is a victim or not.  I

16  don't see that as -- first off, I don't think we used the word

17  victim in the indictment.  But the point is that if these are

18  largely strict liability crimes, and more importantly for Your

19  Honor's consider, T.F., who I think Mr. Treem was referring to

20  as T.G., informed Mr. Lee immediately upon arrival in Florida

21  that she was in fact 16, and it was after that information

22  being provided to Mr. Lee from T.F., that he then posted the

23  ads on back page -- and I think that is an important

24  chronology -- and facilitated her prostitution, it is also

25  after that that he facilitated her return to Maryland.  And it

1   is also after that he created counterfeit documents for her,

2   the delivery of which --- in the form of Nino, where he

3   indicated that he knew that her age was that of a minor and

4   that he was hoping to not only commit these crimes, but to

5   portray her as someone that was older than she was, in addition

6   to that, the creation of the photographs.

7            So I just want that to be absolutely clear, because

8   I think that that is an accurate assessment of what the facts

9   as they are alleged in the indictment are.

10           The other factor that I would like to address is the

11  fact that it was just argued or suggested that it is a singular

12  incident involving one individual.  While that is true in terms

13  of what the Grand Jury credited and found probable cause to

14  return this indictment, it is also true that on the computers

15  and the hard drive recovered from Mr. Lee's apartment were

16  numerous other females, who were unidentified.  Well, I

17  shouldn't speak in absolute terms.  There are a couple that

18  were identified, who were just over the age of that of a minor,

19  but others, who were unidentified, in poses and activities that

20  unequivocally constitute pornography.

21           Now, obviously, if they were shown to be minors,

22  there would be obviously a charge commensurate with the one

23  here.  So I think it is relevant for Your Honor's

24  consideration, in terms of the community considerations, to

25  know that there are those other photographs, that the agents

1  are working hard to figure out who those individuals are, and,

2  if they are minors, whether it is determined through a Tanner

3  methodology or from actually identifying those persons, then I

4  am sure the Grand Jury will be asked by my office to consider

5  additional charges.  But I think for the immediate concern of

6  the community considerations it is relevant and appropriate for

7  Your Honor to consider that fact.

8          In addition -- and I did a quick sort of conferral

9  with Special Agent Bradley -- it is somewhat arbitrary that

10 images that were chosen to be reflective in the indictment --

11 because as we craft these indictments, we don't lay out all

12 600-plus images.  But there were images that were more recent

13 than 2009, 2010, based on the forensic examination that was

14 done not only by the Government's expert, but also as verified

15 and oversaw by an expert that was hired by the defense counsel.

16         So if Your Honor is inclined to put some temporaral

17 weight to that argument, then I suggest that there are more

18 recent downloads that appear, at least forensically, to be

19 acquired in a more recent time period.

20         I think that the concern I have with regard to the

21 Silver Spring third-party custodian, I am not saying that that

22 would not be an appropriate person.  I guess I would ask the

23 defense to address the fact that they are saying that the dad

24 does leave for extended periods of time, two, three weeks

25 perhaps.  So is there a surrogate that comes in during those

1   intervals to serve that function, if dad is leaving for that

2   long period of time?  And that is also a concern that the

3   Government has.

4              But those are the principal issues, based on things

5   previously --

6              THE COURT:  All right.  Thank you.

7              MR. TREEM:  Can I just address that last point, Your

8   Honor?

9              THE COURT:  Yes.

10             MR. TREEM:  I think it is somewhat -- it can be, I

11  think, appropriately inferred, and I think it also is true,

12  that the father, Dr. Lee, will adjust his schedule to the

13  commands and requirements of being a third-party custodian, if

14  the Court sees fit to impose that.  I mean, that is something

15  that we can manage, I mean he can manage and is willing to

16  manage to --

17             THE COURT:  Okay.  I mean, generally speaking, my

18  thought on a third-party custodian is that they would not be

19  gone for extended periods of time.  And if that was necessary,

20  then perhaps, you know, another third-party custodian might be

21  proposed.

22             MR. TREEM:  Well, you know, first of all, I don't

23  think that is going to happen, because I think in speaking with

24  Dr. Lee that he has indicated a willingness to do whatever, as

25  I said, whatever is appropriate to do as a third-party

1  custodian, if that means being around rather than being away

2  for extended periods of time, then that is what he is prepared

3  to do.  That is kind of the short of it.

4             The mother also lives at the residence.  The brother

5  also lives close by.  And if in fact it becomes an issue in

6  which the father has to leave for extended periods of time, we

7  would certainly advise the Court and request a modification to

8  allow a substitute custodian to be appointed for the duration

9  of the father's absence from the District of Maryland.  And

10 there are people who are willing to do that.  As I said, the

11 older brother, who is here and works in the family business, as

12 well, as well as the mother.

13             THE COURT:  Thank you, Mr. Treem.

14             Thank you for your report, Ms. LaRue.  Did you have

15 anything to add?

16             MS. LaRUE:  Could I approach?

17             THE COURT:  Yes.

18             MS. LaRUE:  Thank you.

19             (Whereupon, a Bench Conference followed, which was

20 off the record.)

21             MS. LaRUE:  My recommendation obviously is the same.

22 However, I just wanted to say that if the Court is inclined to

23 release the Defendant --- obviously until --- is posted, as

24 well as the location monitoring ---

25             THE COURT:  --- come up here, too.

1              (Whereupon, a Bench Conference follows, which was on

2    the record:)

3              THE COURT:  --- at this point --- this issue up here

4    rather than ---.

5              --- is applied --- why detention is not

6    appropriate --- although --- flight concerns and danger

7    concerns causes me to get to --- classified as to the right of

8    detention or to the left of detention.  But those strict

9    conditions --- only thing they are just talking about there,

10   because I think there is an incentive to flee hear, I think

11   with the ability to flee.  And once --- didn't want to put you

12   on the spot because I didn't know if you had talked with --

13             MR. TREEM:  I have not talked to them about any

14   property or surety to be posted.  I have not done that.  Do you

15   want me to do that?

16             THE COURT:  Well, I think we are probably --- put it

17   back on the record at this point.  I mean, But right now I

18   am --- 24/7 lockdown.  And with the phone in place --- Pretrial

19   doesn't have confirmation that it is an available line right

20   now --- set it up today.  And making some property ---

21             MR. TREEM:  Okay.  Well, then I would -- I mean, I

22   could probably get back to Your Honor on the property, you

23   know, within 24 hours, if not sooner.  But the problem is that,

24   you know, I -- I would hope the Court would not be detaining

25   Mr. Lee while we did that.

1         THE COURT:  I am detaining him until conditions can

2 be put in place.

3         MR. TREEM:  Oh, Your Honor, that's -- I mean, I have

4 had two cases in which issues like this have come up in the

5 past.  And each time the Court --

6         THE COURT:  Well --- electronic monitoring.

7         MR. TREEM:  Well, okay.  But the problem is that he

8 is being detained because we just can't get to it today.  There

9 is -- I mean, they can't verify it.  The line is there.  I mean

10 --- setting it up.  It's on Verizon.  It is at their home in

11 Silver Spring.  And to detain Mr. Lee overnight at the CDF or

12 wherever it is going to be is just totally inappropriate under

13 those circumstances, because it is really just a function of

14 time and the ability of Pretrial to go confirm that that is

15 requiring him to be there.

16         THE COURT:  Well, it is what it is --- I am shocked

17 the Government is not seeking detention.  I respect that that

18 was a promise that they once made.  And I --- but this is one

19 of the worst set of facts I have seen.

20         MR. TREEM:  Well, with all due respect, Your Honor,

21 it is not.

22         THE COURT:  That is not what I have seen.

23         MR. TREEM:  Okay.

24         THE COURT:  And, you know, in any other case the

25 Government could ask for detention --- but I think conditions

1  of release ---

2                 MR. TREEM:  So then he can't -- an exception to go

3  to work?

4                 THE COURT:  No.  I just said 24/7 monitoring.

5                 MR. TREEM:  How about going to see me?

6                 THE COURT:  I think we could talk about all those

7  details --- confront the property issue, because I think --

8                 MR. TREEM:  Well, give me some idea of what would

9  satisfy you, Your Honor.

10                THE COURT:  --- his parents have property they are

11 willing to post.  I think that would address it.

12                MR. TREEM:  What about a bond, monetary bond,

13 instead?

14                THE COURT:  From them?

15                MR. TREEM:  Yes.

16                THE COURT:  I would entertain that.  But Pretrial,

17 of course --- detention.

18                MR. TREEM:  I understand that, but that is not --

19                THE COURT:  --- willing to set conditions, I would

20 want their input on what the property was.  But I am open to

21 that.  But I think that--

22                MR. TREEM:  But even I attempted that in the next

23 two minutes from Lee what he would be willing to do, that is

24 still not going to release him tonight?

25                THE COURT:  Well, I don't know if Pretrial ---

1   Pretrial wants the equipment --- if we want to take a break and

2   see if we can do that, I don't know the availability of a

3   monitoring device in place, so I am happy to take a recess,

4   then ask them to come back and ---

5            MR. TREEM:  Well, I would like to know how long that

6   is -- yes, I would like to know how long that is going to take.

7   And I can talk to -- I think that is Pretrial's obligation to

8   let us know how long that is going to take verify and what they

9   have to do about it.

10           THE COURT:  --- what was in place.  So I think --

11           MR. TREEM:  Well, I understand that, and that's

12  fine.  It is.  I am just representing that.  And in the

13  meantime I can talk to Dr. Lee about property and/or a bond of

14  some sort.

15           THE COURT:  As I say, I have an open mind.  I

16  just ---

17           MR. TREEM:  Okay.  But I guess what I --

18           THE COURT:  I think we should take --- get in place.

19           MR. TREEM:  That's fine.

20           THE COURT:  So I am happy to take a break from this

21  and take a few other matters.  And then we can recall this when

22  you are all ready.  I will be here.

23           MR. TREEM:  Okay.  Fair enough.

24           THE COURT:  Do you want the --

25           MS. LaRUE:  No ---

1           (Whereupon, the Bench Conference was concluded.)

2           THE COURT:  Okay, counsel.  We are going to take a

3    recess from this matter and just come back.  And whenever you

4    are ready to address some of the issues that we talked,

5    Mr. Treem, I will be here on other matters.

6           MR. TREEM:  Okay.  Can Mr. Lee remain here?  Because

7    I may need to confer with him.

8           THE COURT:  Not while we continue -- I mean, you can

9    confer with him in the marshals' service.  But I think they

10   need to bring -- we cannot have more than one person here.

11          MR. TREEM:  All right.

12          (Whereupon, a brief recess was taken.)

13          THE COURT:  Recall the case of U.S. versus Richard

14   Lee, JFM-14-0002.  Just to resume the hearing that we were

15   having on release conditions.  Let me -- I am prepared to

16   address some of the things.  I gave you a brief comment at the

17   bench as to where I was headed and I know counsel have looked

18   into perhaps some other issues with respect to posting of

19   property.

20          So let me just make the comments that I have to make

21   and then you can tell me what you propose in terms of release.

22   As I said, I read the indictment, I read the pre-trial report

23   and I have heard the argument of counsel and understand that

24   the defense -- that the Government is not seeking detention

25   which they have the right to do and they have not ---.

1          Of course, the Government cannot detain on their own

2   because of risk of danger.  I could detain on the basis of risk

3   of flight sua sponte without the Government's motion.  And

4   certainly that is something that I considered based on these

5   facts and circumstances.  Notably the Government enjoys the

6   presumption in favor of detention with respect to danger and

7   flight.

8          A presumption which is rebuttable by the defense and

9   of course the danger presumption is probably not pertinent to

10  the detention issue.  Those factors may bear as to conditions

11  of release.  With respect to the flight concerns, I think that

12  Mr. Treem has done a very capable job and very compelling job

13  on behalf of his client arguing that conditions of release can

14  be fashioned to address flight concerns and that there are

15  facts and circumstances present that rebut the presumption.

16         And I think  notably the presence and support of

17  Mr. Lee's family, his ties to his family who are local, the

18  fact that he knew about the investigation and is still here

19  some months later, several months later and that he self

20  surrendered today I think are all significant factors.  I think

21  pre-trial also has very capably noted the risk of indicia as to

22  flight.

23         And as I said, I think Mr. Treem  has addressed each

24  one of them head on and I think that there remains in

25  fashioning conditions of release, concerns that I have both

1  with respect of flight and danger that cause me to conclude the

2  various significant conditions of release should be fashioned

3  and addressed.

4       And with respect to that, let me just explain my

5  reasoning.  Mr. -- and I should have noted too, Mr. Lee has no

6  criminal record and that is of course significant in terms of

7  rebutting the presumption.  It also I think causes the Court to

8  be concerned given that the allegations in the indictment

9  appear to aberrant(sic) based on his otherwise clean

10  background.  So that causes me some concern.

11       We can all debate what to call the individual named

12  in the indictment, I think Mr. Treem's points are all very well

13  made with respect to the allegations.  I think this is a very

14  serious offense.  The allegations in the indictment are very

15  substantial.  I think the allegations in the indictment clearly

16  establish that while Mr. Lee may not have know that the

17  individual named here, T.F., was a minor at the time that they

18  traveled to Florida, that that was known.  It is alleged at the

19  time that Mr. Lee actively engaged in prostituting and

20  including information about that individual on that page as

21  well as additional -- fairly substantial period of time that

22  they continued to interact thereafter.

23       That is a separate offense from the one that this

24  Court often sees and that is the possession of child

25  pornography.  And the allegations here is that there was a very

1   substantial volume of child pornography found, 600 images which

2   in the scheme of what this Court sees is on the high end.

3   Certainly I understand the Government picks and chooses what to

4   put in the indictment in terms of offenses -- in terms of

5   actual pictures.

6          Certainly the ones noted and alleged in the

7   indictment are ones that are significant child pornography. I

8   recognize that those two dates are not perhaps current.  I

9   accept the Government's proffer that there is more current

10  information but I think notably that at the time of the search

11  in March of 2013, all of those images had been retained for a

12  period of time and that is significant as well.

13         The penalties involved here are very substantial.

14  The incentive to flee is very great.  Particularly for someone

15  who has no prior record.  And certainly why I don't penalize

16  Mr. Lee for having the ability or the fact that he has traveled

17  abroad, that is a reality in terms of assessing the risk of

18  flight.

19         The fact that he can and has traveled.  I understand

20  the Government has a passport and that is of note to me as

21  well.  And so all of those circumstances, while as I said, I

22  concluded that the presumption has been rebutted with respect

23  to flight or all of the facts that I think militate in favor of

24  very stringent conditions of release.

25         Frankly, this is maybe even inconsistent with things

1  that I have done in the past, which the Government has sought

2  detention.  So it is mindful of the fact that Mr. Lee has

3  substantial family ties, responsible individuals available to

4  be a third party custody.  That is of note to me as well.  That

5  Dr. Lee is willing to act as a third party custodian.

6          I had indicated in the prior hearing to counsel that

7  I did think that the posting of some type of property or bond

8  was appropriate as well given the risk of flight and I don't

9  know if counsel has had the opportunity to look into that.

10          MR. TEEM:  I have, Your Honor.  But let me just if I

11  might perhaps just add some other I think facts with respect to

12  the Court's comment that -- if I wrote this down, talk about

13  substantial penalties providing the incentive to flee.

14          In addition to Mr. Lee knowing about the

15  investigation, since the time of the search, and the fact I

16  think at one point he got a target letter, so it became

17  actively known to him.

18          THE COURT:  Was that before or after the search

19  warrant?

20          MR. TEEM:  I think it was just after the search

21  warrant.

22          MR. CROOKS:  It was at the time of the warrant.

23          MR. TEEM:  The time of the search warrant.

24          THE COURT:  That day?

25          MR. CROOKS:  It was given to the agents to give to

1  him that day.

2          MR. TEEM:  So that day.  Okay.  In addition to that,

3  this indictment was originally returned I think on January 2

4  and it was sealed while counsel were engaging in some

5  additional discussions.  Mr. Lee was aware of that -- that

6  fact.

7          The superceding indictment was returned last week I

8  believe --

9          THE COURT:  January 30 according to the copy that I

10 have.

11         MR. TEEM:  Right, last week.  And Mr. Lee obviously

12 was aware of that.  The -- today's date was originally -- was I

13 think was set for -- at some point it was set in and then it

14 was postponed to accommodate the schedules of the officers I

15 believe and maybe one of them was sick -- actually let me

16 retract that.

17         What had happened was we had gotten notice that the

18 Grand Jury was going to return an indictment on a certain date

19 and then was subsequently was revised by Mr. Crooks.  And we

20 thanked him for the notice that that date was postponed because

21 the testifying officer was ill and needed to get better.

22         And so there was further delay.  Mr. Lee was advised

23 of that.  There was ample opportunity knowing the -- knowing

24 what was coming down the pike for Mr. Lee to flee.  He didn't.

25 Today was arranged by agreement between me and Mr. Crooks

1  through a series of e-mails late last week.  So Mr. Lee was

2  aware that today was the day.

3       The opportunity to leave existed even if the Court

4  doesn't want to consider the 11 months since the search,

5  certainly was out there as of the 2nd of January and Mr. Lee is

6  here.  So I think that is instructive, Your Honor.  But in

7  assessing the likelihood of any flight at all -- all right, but

8  with respect to the posting of some kind of a surety if you

9  will, I have spoken to Mr. Lee's father who is willing to post

10 the family home at 2212 Week(sic) Lane in Silver Spring.

11      It has a -- obviously we don't have the

12 documentation in front of us, but Mr. Lee believes that the

13 market value of that home is somewhere in the neighborhood of

14 $1.3 million.  He estimates that there is an existing mortgage

15 of somewhere in the  neighborhood of $200,000.  Which leaves --

16 I was not a math major but $1.1 million potentially of equity

17 in the home.

18      And that is willing to be -- he is willing to post

19 that.  I have also been told however, by pre-trial that it is

20 not possible to do whatever it needs to do to verify or

21 otherwise make functional on their end, the electronic monitor.

22 Which the Court has indicated is going to be a requirement of

23 any release.

24      And with that in mind, I would agree reiterate in

25 open court what I said on the record earlier, that I -- well

1   and pre-trial indicated that the reason that it can't be done

2   is because of the hour of the day.  There just isn't personnel

3   available in Greenbelt where this would be monitored because of

4   the southern division location, Montgomery County.  There is no

5   one available now to do that.

6           And we would urge the Court to reconsider what the

7   Court indicated that the Court was likely to do and that is to

8   hold Mr. Lee overnight.  It is -- we would submit Your Honor,

9   that is totally arbitrary.  I mean the concern -- I guess

10  implicit of that is that you have some concern that Mr. Lee

11  might flee tonight.  That going home with his father and

12  brother, leaving his car here, giving me his car keys and

13  spending the night with his family somehow gives him access to

14  do tonight what he hasn't done for almost a year.

15          There is no evidence to suggest that at all.  And I

16  would submit to the Court that, one night in CDF is one night

17  too many.  If there is an alternative to that that is

18  reasonable.  And we would submit that there is.  And so we

19  would urge the Court to one, to accept the posting of the

20  property that Mr. Lee the father is willing to post.

21          Let us know what we need to produce by way of

22  documentation to satisfy the representations that I just made.

23  That there is value in the home that would be available.  Allow

24  Mr. Lee to go home with his father and brother to the house in

25  Week Lane tonight to report back as early as the Court's

1   calendar would permit tomorrow and also to -- that would permit

2   pre-trial to do whatever it needs to do to verify and otherwise

3   make operational the electronic monitor.

4           I -- you know, I -- it just seems to me totally

5   illogical and arbitrary to believe that Mr. Lee has -- there is

6   a risk that he is going to split tonight under those

7   circumstances.  He just doesn't have the wherewithal to do it.

8   And he is in a location where people are kind of -- not kind of

9   but people are promising to the Court under potentially pain of

10  contempt if you will, that they will ensure that he is here

11  tomorrow.  And so we would ask that you allow that to happen.

12          THE COURT:  Just as a practical matter, I actually

13  don't think he would need to come back to Court tomorrow, it

14  would be -- pre-trial would be -- it is only if he is in

15  custody then he would have to come back to Court to be

16  released.  But pre-trial is prepared to go attempt to hook up

17  the equipment tomorrow morning?

18          MS. LARUE:  That is my understanding, that both of

19  the individuals in the Greenbelt that are specialized in that

20  area will be available tomorrow.  I don't know if they will

21  have instructions for the defendant to go to that office first

22  and then they will meet him at the house afterwards.

23          THE COURT:  What would you normally do?

24          MS. LARUE:  It depends on what specialists prefers

25  to do.  So without them being available right now, I can't ask

1   them what their preference would be.

2           THE COURT:  Okay.  Mr. Crooks what is your position?

3           MR. CROOKS:  Your Honor, I -- as Your Honor has

4   pointed out based on juxtaposing where we stand on this case

5   and similar cases.  What we are -- the Government is agreeing

6   to is already a gross anomaly and I think that -- I think -- I

7   already know that there is colleagues for a bit of a jaundiced

8   eye why I am taking the stance that I am agreeing to

9   conditions, I mean, agreeing to release in any conditions.

10          But that being said as a background, I agree with

11  the Court's sentiments that you expressed before we recessed

12  that the prudent thing to do is to make sure that all of the

13  conditions are present that will ultimately be present.  And it

14  is not to try to punish the defendant and send him to CDF for a

15  night.  That being said, you know, there are countless

16  defendants that I have sent opposite this table that don't have

17  the means and the familial support but the same dynamics are in

18  to play and no exceptions are  made for those individuals until

19  the proper conditions are established what the Court would deem

20  fit.

21          And I think in this context, it is fair to -- it is

22  fair to make -- the Court to mandate that those conditions that

23  ultimately we would set are set.  And I don't make that

24  cavalierly also. I think that a lot has been made about the

25  time frame but also the nature of the offense.  On the

1   defendant's computer were not just the fabricated documents

2   that are mentioned in the indictment, the -- that is the

3   driver's license.

4            Right after the search warrants, his passport,

5   defense counsel asked for his passport back and I explained to

6   them that we couldn't return that passport because we believe

7   it has an evidentiary value because it did appear that it was

8   also being used as a template for counterfeit document.

9            In addition, it appears that his CPA license and the

10  grades that he earned as a CPA were photoshopped and modified

11  and he changed the grade to having where it appeared that he

12  had failed his CPA, he changed it to have passed it.  We saw

13  false graduate degrees that he had created. I am not trying to

14  stack the deck here but I want to say this is someone who has

15  shown the capability.  And sometime the net effect of the first

16  arraignment -- I am sorry the first initial appearance where

17  you actually hear the charges that now are pending in light of

18  the fact that we have reached an impasse in the negotiations.

19           Sometimes now the motivation is in place as well.

20  Again it is going to be -- I credit the defense, it might be a

21  very long 12 to 24 hours for the defendant but that is short

22  compared to the time frame that the public has an interest in

23  accounting for which is what we will be the lead up to trial.

24  And I think those are the conditions that the Government is

25  supportive of and we agree that or we advocate for all of those

 1  conditions to be in place before the defendant is released.

 2            THE COURT:  Okay.

 3            MR. TREEM:  Well, the fact that Mr. Lee has had

 4  opportunities that other s may not have had, as of reason to

 5  treat him otherwise than what we would argue makes sense here,

 6  I find somewhat offensive.  But the fact remains that

 7  regardless of what might have been on Mr. Lee's computer, he

 8  doesn't have it anymore.

 9            He won't have access to his parent's computer

10  because that is password protected.  He doesn't have the

11  password.  To suggest that he is going to be able to some how

12  put together false documents overnight and get out of town is

13  nonsensical.  It justifies all logic and reason.

14            We are not asking for the Court to give him free

15  reign.  We have made our record on what we think is an

16  appropriate bond condition, the Court has indicated what the

17  Court is willing to do in that regard.  EM being 24/7 and we

18  will live with that and maybe we will appeal or not.  But we

19  understand that condition.

20            What we are suggesting to the Court now is simply

21  let him go home with his father, to come here to report to you

22  tomorrow.  And be released upon pre-trial doing its job

23  tomorrow morning, getting someone to the house or doing

24  whatever it is that they have to do and so advising the Court.

25            That is all we are asking for.  It is -- you know,

1   15 hours of free time if you will.  And that in light of

2   everything else, doesn't seem to me to be either unreasonable

3   to request nor is there evidence to suggest that it shouldn't

4   be granted.  Your Honor, so we would reiterate what we have

5   requested in that regard.

6          But there is one other point that I want to --

7   actually a question.  What happens if pre-trial can't get this

8   done tomorrow?

9          THE COURT:  Oh, pre-trial will get it done tomorrow.

10  One way or the other.  Hopefully somebody in Greenbelt can do

11  it, if not then somebody else will do it.  I don't think that

12  is an issue.

13         MR. TREEM:  Okay.  Okay.  Well and the other

14  question is, Your Honor, if the Court is willing to accept a

15  property that we suggested -- what would the Court need to

16  verify ownership and value and need?

17         THE COURT:  Let me say first is that I think the

18  property offered is adequate and significant. And obviously

19  Dr. Lee's willingness and I assume perhaps -- is the property

20  held jointly in Dr. Lee and his wife's name?  Just -- yes,

21  joint ownership?  So they both will need to sign the paperwork

22  for that.

23         But obviously their willingness to post it is

24  significant in my mind in terms of its adequacy.  So, I think

25  you know, first you would have to have both Dr. Lee and Ms. Lee

1  sign the bond -- you know, posting the property.  I would issue

2  an order to record the agreement to forfeit the property and

3  the land records in Montgomery County.

4          We usually ask that that be done within a couple of

5  days of the hearing here.  And typically there has to be some

6  offer of proof of ownership of the property.  Be it the deed

7  and I don't now how much -- what evidence -- I have

8  traditionally been flexible in terms of evidence of value on

9  the property.  Not everybody has a current assessment.  But

10 maybe there was a property assessment and then what is left,

11 a --- reflection of what is left on the mortgage so.

12         Presumably you could put that together with

13 documents that they are likely to have as opposed to having to

14 go create a document.  But I -- on that issue I do accept a

15 proffer that there is significant value in the property subject

16 to the confirmation so I think that is adequate.

17         Let me just say, it is certainly reasonable --

18 perfectly understandable why you Mr. Treem would ask for

19 release on Mr. Lee's behalf.  And you have noted a number of

20 factors in his favor.  Frankly all of what, I think, rebut the

21 presumption in favor of detention and a case that otherwise --

22 say reasonable minds may differ.  You may debate the reasonable

23 part of that but minds may differ as to what the conditions of

24 release are appropriate.

25         But the question for me is if the conditions of

1   release are appropriate, then they are appropriate.  They are

2   appropriate to be in place.  Not 15 hours from now or two days

3   from now or three days from now and it is with very few

4   exceptions, my general practice that if I am setting conditions

5   of release along these lines and this restrictive, that release

6   is not allowed until the conditions are in place.  I have every

7   faith that pre-trial is going to make this happen tomorrow.

8           It sounds as though pre-trial got additional

9   information that the phone is suitable, that the conditions

10  have been -- the special features have been removed and I know

11  that Ms. LaRue will make sure that somebody is able to do that.

12  So I am prepared to set conditions of release, go over those

13  with Mr. Lee and Dr. Lee, make sure he understands his

14  obligations.  We can get all of the paperwork signed today and

15  then have Mr. Lee brought back here tomorrow for further

16  direction from pre-trial as to whether to go home or have the

17  pre-trial services officer meet with him.

18          And then I think -- I am not sure we need another

19  hearing.  Just in terms, the other loose end would be the --

20  having the deed and establishing the general fact of value on

21  the property.  And I guess I think probably to obviate the need

22  for a hearing, I would ask pre-trial and the Government to

23  review that documentation together with Mr. Treem and then I

24  will accept that as a general representation by all involved,

25  that there is substantial equity.

1          I understand that it  may not be down to the penny

2     of what we discussed but it certainly sounds as though there is

3     substantial equity in the property. So, Dr. Lee, I am going to

4     make you a third party custodian of your son.  And I think

5     there is probably already -- you were already spoken to about

6     what that entails.  First and foremost, he would be residing

7     with you in your home on 24/7 electronic monitoring except for

8     leave that is approved in advance.  And I am going to go over

9     the details of the release.

10          But in terms of your obligations, you would use your

11    best efforts to make sure that he appears for any future court

12    proceedings, he complies with any release conditions and if he

13    were to violate the release conditions, you would be required

14    to notify the Court immediately.  Do you understand that those

15    would be your obligations?

16          DR. LEE:  Yes, ma'am.

17          THE COURT:  There is a spot for you to sign on this

18    paperwork, I am going to go over what all of the conditions

19    are, if you have any questions for me when I am done, I would

20    be happy to try to answer them for you.  If not then there is

21    going to be a spot for you to sign.  And as we discussed, I

22    understand that you are willing to post your home in Silver

23    Spring.  And so there is paperwork that you will have to sign

24    in that regard and I just want to make sure that you understand

25    what that means.

1            You are signing an appearance bond -- sir? Yes?

2            DR. LEE:  --- documentation ---

3            THE COURT:  I am sorry, I can't hear you?

4            DR. LEE:  --- option --

5            MR. TEEM:  Your Honor, if it makes a difference in

6     terms of Mr. Lee, Jr. being released  today, Dr. Lee can give

7     you a check for what would otherwise be the value of the house?

8            THE COURT:  I appreciate that offer.  It won't

9     change the dynamics today and I am confident that we can get

10    the paperwork tomorrow, so that won't be the posting of your

11    property won't be a holdup for tomorrow in terms of his

12    release.  So but what the appearance bond  and agreement to

13    forfeit property means is that by posting your property, if

14    your son were to violate any of his release conditions or not

15    appear for either a court appearance or to serve a sentence if

16    the case got to that point, then you would -- the Government

17    would have the right to forfeit your home.

18            And that is the most notable thing that I want to

19    make sure you understand and that you are willing to post the

20    property under those circumstances.  Are you?

21            DR. LEE:  Yes ---

22            THE COURT:  Okay.

23            DR. LEE:  --- cash, I can write the check for you

24    or ---

25            THE COURT:  Yes, thank you for that offer.  It

1  doesn't change my position.  So and I do think the posting of

2  the property is a significant part of the conditions of release

3  that I am fashioning.  I may go over those conditions of

4  release with your son and if I could ask you to please listen

5  as well if you have any questions for me when I am done, as I

6  said I would be happy to try to answer them for you.  Thank

7  you.

8           Mr. Lee, I am going to release you.  The conditions

9  of release are important to understand and comply with for a

10 couple of reasons.  Most notably, if you violate your release

11 conditions, you run the very substantial risk that you will be

12 held in custody pending your trial.  In addition, you could

13 be -- if you violate your release conditions, you could be

14 prosecuted separately for the violation of your release

15 conditions.  And depending on what the nature of the violation

16 were, that could be -- subject you to prosecution for an

17 offense that carries a penalty for up to ten years

18 incarceration and $250,000 fine just for the violation itself.

19          While you are on release, you are not to violate any

20 Federal, state or local law.  You are going to be expected to

21 reside at your parents' home in Silver Spring.  You agree to

22 appear for any court appearances.  If the case got to the point

23 where a sentence was imposed, you would agree to appear to

24 serve your sentence.

25          Your father is going to be your third party

1   custodian.  You heard me go over his obligations with him and I

2   trust that you are not going to put him in a difficult position

3   of having to notify the Court of any type of violations.  You

4   are going to report on a regular basis to pre-trial services,

5   following any reasonable instruction or direction they give to

6   you.

7           As you also heard, your father is going to post --

8   your father and your mother are going to post property -- their

9   home in Silver Spring as -- in support of your release.  And

10  you understand that if you violate the release conditions, they

11  run the risk that they lose that home.

12          I understand that your passport is already in the

13  possession of law enforcement.  If you have any other

14  passports, you are required to turn them in immediately.  You

15  are not to obtain any new passport. You are going to -- as I

16  said, reside at the address that we have approved.  You are not

17  to change that unless you get approval in advance from pre-

18  trial services and the Court.

19          Your travel will be restricted to Maryland for

20  purposes of what I am about to get to in a moment.  You will

21  undergo any medical or psychiatric treatment or counseling that

22  pre-trial determines is appropriate.  You are to refrain from

23  any excessive use of alcohol.  You are to refrain from any use

24  or unlawful possession of any narcotic drug or controlled

25  substance unless a doctor prescribes it to you.

1              And you will submit to any testing or treatment for

2   any type of substance -- controlled substances that pre-trial

3   determines is appropriate.  You are going to be placed on

4   electronic monitoring and basically restricted to your

5   residence except for leave approved in advance by pre-trial

6   services.

7              For medical appearances, medical purposes, court

8   appearances, meetings with counsel or other activities that are

9   specifically approved by the Court.  You are to refrain from

10  the use of any type of computer system or internet capable

11  device or similar electronic devices at any location and at

12  your parents' home.  I understand that they may have computers

13  there, Mr. Treem has represented that those are password

14  protected.   Is that true of all of the devices there, Mr.

15  Treem?

16             MR. TEEM:  Yes, Your Honor.

17             THE COURT:  Okay, so you are not to possess them

18  independently and obviously not to access any of them in the

19  home.  You are not to have any contact with any  minors unless

20  you are in the presence of either your third party custodian or

21  other individual that is approved by the Court or pre-trial

22  services in advance.  Do you understand the conditions that I

23  have gone over Mr. Lee?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And I will let you review these with

1  Mr. Treem and if you have any questions for me, I will be happy

2  to try to answer them for you.

3            MS. LARUE:  Your Honor?

4            THE COURT:  Yes?

5            MS. LARUE:  Regarding the conditions and you may

6  have said it and I did not hear it, but pre-trial would

7  recommend that he not have any contact with the victim -- the

8  alleged victim or witnesses as well as not possess any --

9            THE COURT:  Yes, I didn't say that but  yes that

10 should be -- would you mind giving that back to me, Mr. Treem.

11 It is a fairly standard condition, Mr. Lee.  You are not to

12 have any contact with the individual identified in count 1 of

13 the indictment or with any potential witnesses in the case.

14 And obviously the Government should share any information that

15 they have in that regard so that Mr. Lee knows who that covers.

16           MS. LARUE:  And Your Honor, pre-trial would also

17 recommend that he not possess or view any pornography

18 throughout the pendency of this case.  And I believe consistent

19 with what we generally recommend in the Adam Walsh Statute that

20 there is a firearms restriction as well.

21           MR. TEEM:  I miss the last --

22           THE COURT:  Firearms restriction?  Is there any --

23 no possession of any -- so Mr. Lee, you are not to possess any

24 firearm, destructive device or dangerous weapon and you are not

25 to possess any pornography during the pendency of this case?

1  You understand those additional --

2             THE DEFENDANT:   Yes, Your Honor.

3             THE COURT:   Okay.

4             (Pause.)

5             THE COURT:   Ms. Larue, I wonder if it makes more

6  sense to do a come up for Mr. Lee to the Greenbelt courthouse?

7             MS. LARUE:   I don't know that it makes a difference

8  either way and I don't know what the logistics are behind that

9  as to if that is possible.  That may or may not postpone what

10 time he might be released.

11            THE COURT:   Say that again?

12            MS. LARUE:   That may or may not postpone what time

13 he might be released because if he is taken to CDF tonight,

14 then obviously would need to be transported at some point in

15 time to --

16            THE COURT:   Would you prefer that --

17            MR. TEEM:   I am sorry I missed the question --

18            THE COURT:   The question is whether to bring Mr. Lee

19 back here or to the Greenbelt courthouse?  What is your

20 preference?

21            MR. TEEM:   I think -- I guess whatever is easiest

22 and faster which I think would be here.

23            THE COURT:   That is probably here.  Yes, that is --

24            MR. TEEM:   I mean, I don't want to get him caught in

25 the switches of the marshals having to --

1            THE COURT:  Then we will just do that.  Because I am

2   thinking also that -- well, Dr. Lee is here and able to sign

3   the agreement to forfeit property and his wife is going to have

4   to sign it at some point.  I am okay with arranging that

5   through pre-trial.  So I don't know what is more convenient for

6   her.  She can either come here tomorrow to do it or can do it

7   with --

8            MR. TEEM:  I guess it is probably easier if Mr. Lee

9   is going to be in fact be released at the time that his father

10  and mother come here to execute whatever needs to be executed,

11  it is probably easier to do it -- everything here.  Can I have

12  a moment?

13           THE COURT:  Sure.

14           (Pause.)

15           MR. TEEM:  It never works quite as smoothly as one

16  would hope, Your Honor.  Mrs. Lee is currently in California.

17  She is not going to be able to get back to Maryland until late

18  tomorrow.  I would like to get my client out tomorrow if that

19  is possible.  So there are a couple of things that come to

20  mind.

21           If we can whatever documents need to be signed,

22  Mrs. Lee can provide e-mail signatures I am sure, that is kind

23  of one possible alternative.  We can have her here on Friday,

24  that is another possibility.  I would like my client not to be

25  in jail for a second night.

1          Third as Dr. Lee has just advised me, he is prepared

2   to give the clerk of the court with a check which -- to kind of

3   cover the time it takes Mrs. Lee to get here.  Just as kind of

4   an assurance that she will show up on Friday to execute

5   whatever documents need to be executed.

6          THE COURT:  Okay, here is what I would suggest is

7   perhaps we can have pre-trial talk to Mrs. Lee tomorrow and

8   confirm her willingness to post the property.  And you can

9   facilitate that Mr. Treem and then  make arrangements for her

10  to sign the paperwork by Friday.  I don't think it is necessary

11  to have that.  I think having the electronic monitoring in

12  place addresses that.  So I think that is adequate.

13          MR. TEEM:  Should I arrange that through Ms. Larue

14  or through --

15          THE COURT:  I would until further notice, I think

16  Ms. Larue is going to be doing this or figuring out who is

17  doing it.  So I think she is probably the person to -- we are

18  going to do a come up for tomorrow morning at 9:00 and so that

19  will give you the hopefully plenty of time to get everything

20  squared away tomorrow.

21          And it may be that -- so Mr. Lee, pardon me, Dr. Lee

22  can sign the appearance bond today and then you could probably

23  have Mrs. Lee sign it in Greenbelt, right?

24          MS. LARUE:  I would imagine so, Your Honor, as long

25  as we can keep the originals and then send that back to the

1  Court --

2          THE COURT:  Yes, so it may be easier for her to

3  appear in Greenbelt and sign the paperwork there.

4          MR. TEEM:  Okay.

5          THE COURT:  But I think that is -- as long as we

6  know that she is okay with it.  Which I am sure she is, but

7  since this is sort of a new development, I think that is

8  adequate.

9          MR. TEEM:  Okay, fine, Your Honor.

10          (Pause.)

11          THE COURT:  And Mr. Treem, let me give you also the

12  agreement to forfeit property for Dr. Lee and this is what we

13  will get Mrs. Lee to sign.  And you know, the last question I

14  should ask you, is normally once this is signed and I would ask

15  that the agreement to forfeit property which I just handed you,

16  be filed in the Montgomery County records.

17          Given that Mrs. Lee probably won't sign it until

18  Friday, I was going to say that that be done on Monday, the

19  10th?

20          MR. TEEM:  Yes.

21          THE COURT:  Then I am going to put that -- I will

22  give you a copy of this so that it will be done by the 10th of

23  February.

24          MR. CROOKS:  And Your Honor, while they are looking

25  at that, I have an administrative function, which is just I

1   meant and would like to move to unseal the original indictment

2   which was returned on January 2, 2014.

3           THE COURT:  The original indictment?

4           MR. CROOKS:  Right.

5           THE COURT:  Is it superceding --

6           MR. CROOKS:  It is superceding and Your Honor may

7   recall, it is sort of a confusing return, the superceding

8   indictment was unsealed but I think for the way it stands now,

9   the original is sealed, so I am just  moving to have that

10  unsealed.

11          THE COURT:  Okay, I think you probably also need to

12  file a motion at this point.

13          MR. CROOKS:  Okay.

14          THE COURT:  But for purposes of this proceeding, we

15  will unseal it and just follow it up with a motion.

16          MR. CROOKS:  Okay, great.  Thank you.

17          (Pause.)

18          THE COURT:  Okay, so Dr. Lee I see you signed both

19  the appearance bond as well as the conditions of release.  You

20  understand the conditions?

21          DR. LEE:  Yes.

22          THE COURT:  And Mr. Lee, I see you have signed the

23  conditions of the release, you understand them as well?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  So again we will do the come up

1    for tomorrow morning and pre-trial will be in touch with the

2    marshal service and make arrangements and give Mr. Lee

3    direction as to where to go and hopefully by then they will

4    have the name of the person who is going to put the equipment

5    into place tomorrow.

6              MR. TEEM:  So he will be brought to the courthouse

7    first?

8              THE COURT:  He will be brought here.

9              MR. TEEM:  Okay.

10             THE COURT:  And typically -- Ms. Larue can tell you

11   more detail.  But I think when she goes to the marshal service

12   and says that the conditions are being met and he can be

13   released, that that will happen.

14             MR. TEEM:  I mean, either Ms. Levinson or I will be

15   here as well.

16             THE COURT:  Yes, you might check -- you don't have

17   to be but obviously you are welcome to but put the 9:00 on the

18   come up, I don't know if he will be here exactly then.  That

19   may be optimistic of me, that is an early come up but I wanted

20   to do it as early as possible.

21             MR. TEEM:  I appreciate that, Your Honor and I will

22   draw on my past experience to get here at some point --

23             THE COURT:  And you can always stop by the marshal

24   service on your way out and ask them whether that is realistic.

25   So -- okay, so I think the only additional issues that have to

1  be done is have Mrs. Lee signed this paperwork by Friday.  Give

2  information to pre-trial about the property ownership and the

3  value.  We will give you a copy of all of this including the

4  agreement to post or to file the agreement to forfeit property

5  by Monday.

6            MR. TEEM:  And I will have Mrs. Lee get in touch

7  with Ms. Larue.

8            THE COURT:  Yes.  Okay.  Is there anything else?

9            MR. CROOKS:  No, Your Honor, thank you.

10           (Whereupon, the hearing concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

I certify that the foregoing is a correct

transcript from electronic sound recording of the proceedings

in the above-entitled matter.


/s/ Gail A. Williams                          February 19, 2014
Gail A. Williams                                         Date
Certified Transcriber
Certificate No. CET**D-434




/s/ Lisa Contreras                            February 19, 2014
Lisa Contreras                                           Date
Certified Transcriber
Certificate No. CET**D-474